# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Matthew/Sherrie Gonyer

    Debtor(s)

**JUDGE RICHARD L. SPEER**

Case No. 07-32375

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Denied.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The United States Trustee (hereinafter "UST") brings its Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). These provisions operate in concert. First, § 707(b)(1) sets forth the blanket rule that a Chapter 7 case may be dismissed where abuse is found to exist, providing, in relevant part:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Section § 707(b)(3) then sets forth two mandatory considerations against which a court is to assess the existence of abuse under § 707(b)(1). This provision provides:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

As set forth in its two subparagraphs, abuse under § 707(b)(3) is assessed by looking to whether, under subparagraph (A), the debtor filed the petition in bad faith, or whether, as provided in subparagraph (B), the totality of the circumstances demonstrate abuse.

In seeking to have the Debtors' case dismissed under § 707(b)(3), the Motion of the UST initially relied on subparagraph (B), the totality of the circumstances. Particularly, in its Motion, the UST pointed to what is often a primary consideration when evaluating abuse under the totality of the circumstances: whether a debtor has the ability to repay their debts out of future earnings. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004). According to the UST's Motion, the Debtors in this matter had the ability to repay their debts because, as set forth in their original bankruptcy schedules, they had available $882.75 in excess monthly income which, if devoted to a

**In re Matthew/Sherrie Gonyer**
**Case No. 07-32375**

Chapter 13 repayment plan, could pay 100% of the Debtors' unsecured debts which total just under $48,000.00. (Doc. No. 16).

At the Hearing held in this matter, however, the UST, based on subsequent information provided by the Debtors, did not actively pursue its position regarding the Debtors' ability to repay their debts; in effect, the UST dropped its position that the 'totality of the circumstances' warranted a dismissal of the Debtors' case under § 707(b)(3)(B). And insofar as the Court can tell, this appears to be the proper course of action.

Based upon the information before the Court, the Debtors, besides having very little excess income available to repay their debts, have and will continue to have strains on their household budget. For example, it was brought to the Court's attention that the Debtors' son has autism and requires special care. Also, it is unlikely that, if the Debtors were to file a Chapter 13 petition, they could make any meaningful repayment toward their unsecured debts; in addition to their $48,000.00 in unsecured debt, the Debtors also face a steep deficiency as the result of surrendering their marital residence.

Notwithstanding, the UST continued to maintain that the Debtors' case should be dismissed for abuse, citing now to subparagraph (A) of § 707(b)(3). This provision provides that a court, when considering whether to dismiss a case for abuse under § 707(b), must consider "whether the debtor filed the petition in bad faith." This provision was added to the Bankruptcy Code in 2005 by the Congressional Act known as BAPCPA. The implementation of this provision resolves an earlier ambiguity.

Prior to the enactment of § 707(b)(3)(A), some courts had declined to dismiss a debtor's Chapter 7 case based solely on the petition being filed in bad faith. The reason: unlike Chapters 11,

Page 3

In re Matthew/Sherrie Gonyer
Case No. 07-32375

12 and 13 of the Bankruptcy Code, Chapter 7 had no explicit good faith requirement. *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191-92 (9th Cir. 2000). Other courts took the opposite view, finding that a debtor's case could be dismissed based solely on the petition being filed in bad faith. *Industrial Insurance Services Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir. 1991) (lack of good faith is valid basis to dismiss Chapter 7 case 'for cause' under § 707(a)). *See also, First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1, 5 fn. 9 (1st Cir. 1998) (bad faith may be a part of a § 707(b) 'substantial abuse' calculation).

Section 707(b)(3)(A), thus, makes explicit what some courts had found to be implicit: on the basis of bad faith alone, it is permissible for a court to dismiss a debtor's Chapter 7 petition. In this way, this Court has held that the "bad faith" ground for dismissal under § 707(b)(3)(A) is best understood as simply a codification of those pre-BAPCPA decisions which had recognized bad faith as a basis for dismissal. *In re Oot*, 368 B.R. 662, 666 (Bankr. N.D.Ohio 2007). As it regards pre-BAPCPA decisions, especially relevant for this Court is the Sixth Circuit's decision in *Industrial Insurance Services Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir. 1991).

In the case of *In re Zick*, the Sixth Circuit Court of Appeals found that a lack of good faith on the part of a debtor in filing a bankruptcy petition constituted a valid ground for dismissal. *Id.* at 1127. In doing so, the Court stated:

> Dismissal based on lack of good faith must be undertaken on an ad hoc basis. It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*Id.* at 1129 (citation omitted).

Page 4

**In re Matthew/Sherrie Gonyer**
**Case No. 07-32375**

On its Motion for Dismissal, the UST, in support of its position that the Debtors filed their petition in bad faith, relied on these two facets of the Debtors' case. First, in the time period immediately preceding the filing of their bankruptcy petition, the Debtor, Mrs. Gonyer, took a cash advance on her credit card in the amount of $3,000.00. Second, the Debtors, in their bankruptcy schedules, listed as a current monthly expenditure a mortgage expense which was not actually being paid.

On the first point made by the UST, it can be agreed that the protections of the Bankruptcy Code were not intended to shield debtors who, in the time period leading up to their bankruptcy filing, engage in a scheme to accumulate consumer debt with no actual intention of ever repaying it. This is sometime referred to as a "bust out" scheme. *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184 (9th Cir. 2000). Yet, merely because a debtor has not dealt honestly with a particular creditor does not preclude that debtor from seeking bankruptcy relief.

Various provisions of the Bankruptcy Code operate so as to render nondischargeable debts to a particular creditor which were incurred through a debtor's wrongful acts. Prominent examples include: (1) § 523(a)(2), rendering nondischargeable debts incurred through fraud; (2) § 523(a)(4), providing that debts incurred by way of embezzlement and larceny may not be discharged in bankruptcy; and (3) § 523(a)(6), which excludes from discharge debts incurred by the willful and malicious actions of the debtor. These provisions, however, would be rendered largely redundant if, in most instances, the same wrongful acts supported both a finding of nondischargeability and the dismissal of the debtor's case under § 707(b)(3)(A) for "bad faith." A creditor with a § 523(a) could simply seek the dismissal of the debtor's bankruptcy case.

Reading § 707(b)(3)(A) with too close a focus on the debtor's actions toward an individual creditor thus ignores the basic principle of statutory construction that an interpretation that renders another statute superfluous, especially one within the same statutory scheme, is to be avoided.

Page 5

**In re Matthew/Sherrie Gonyer**
**Case No. 07-32375**

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35,123 S.Ct. 2041, 2048, 156 L.Ed.2d 18 (2003). Additionally, affording too much weight to a debtor's conduct toward a single creditor ignores the statute's focus on the bankruptcy case as a whole.

Section 707(b)(3)(A) sets forth that abuse will be found when the debtor "*filed* the petition in bad faith." (emphasis added). The operative word for this purpose being "filed." Under the Bankruptcy Code, the filing of a bankruptcy petition has the legal effect of commencing a bankruptcy case. 11 U.S.C. § 301(a). It follows, therefore, that § 707(b)(3)(A) touches upon all aspects of a debtor's bankruptcy case. In other words, § 707(b)(3)(A) is not directly concerned with a debtor's conduct toward individual creditors, but is rather focused on the debtor's conduct toward the bankruptcy process as a whole.

Still, it goes without saying that a debtor's conduct toward an individual creditor is still relevant in any action to dismiss under § 707(b)(3)(A). A basic function of the Bankruptcy Code is to maximize a debtor's available assets for distribution to creditors. As such, there always exists the possibility that a debtor's conduct toward an individual creditor could appreciably impact the bankruptcy process as a whole. However, so as to strike a proper balance, conduct directed toward a particular creditor or creditors will not normally support the dismissal of a case on the basis of "bad faith' unless, as set forth by the Sixth Circuit in *In re Zick*, the debtor's conduct was particularly "egregious." And, as best as this Court can tell, the $3,000.00 cash advance taken by the Debtor does not rise to this level. For this conclusion, a few observations are in order.

First, the $3,000.00 cash advance taken by Ms. Gonyer only involves one creditor, and relatively speaking, does not involve a significant amount of unsecured debt. This is inapposite to a bust out scheme which often involve tens of thousand of dollars in fraudulent debt. Also there is no indication that the Debtors purchased any luxury items with the cash advance. Moreover, the creditor making the $3,000.00 cash advance has filed a complaint to determine dischargeability.

Page 6

**In re Matthew/Sherrie Gonyer**
**Case No. 07-32375**

(Doc. No. 26). Thus, if fraud on the part of the Debtor, Sherrie Gonyer, is ultimately shown to exist, the creditor will be protected notwithstanding the further administration of the Debtors' case.

Even more important, the events precipitating the filing of the Debtors' bankruptcy petition seem largely driven by an ever increasing decline in their financial situation. Particularly, it did not go unnoticed that, in an attempt to regain control of their financial situation before filing bankruptcy, the Debtors surrendered their home, which they could no longer afford, using the $3,000.00 cash advance to help defray the costs of moving into a trailer. While this very well may constitute a fraud upon the particular creditor, these circumstances hardly resemble an artifice against the bankruptcy process as a whole.

The second argument raised by the UST follows a slightly different path. In seeking to have the Debtors' case dismissed under § 707(b)(3)(A) for "bad faith," the UST brought to the Court's attention that the Debtors placed inaccurate information in their bankruptcy schedules. Specifically, the UST points out that, contrary to their bankruptcy schedules, which listed the payment of a mortgage expense on their marital residence, the Debtors were not, and had not for some time been making a mortgage payment at the time they sought relief in this Court.

The integrity of the bankruptcy process rests upon a debtor's full and honest disclosure of all required information. *See, e.g., In re Gotham*, 327 B.R. 65, 78 (Bankr. D.Mass. 2005). Consequently, to the extent reasonably possible, a debtor seeking the protection of this Court must file bankruptcy schedules which are both thorough and accurate. *In re Bayless*, 78 B.R. 506, 509 (Bankr. S.D.Ohio 1987). This duty continues throughout the duration of the case. FED.R.BANKR.P. 1009.

Debtors who intentionally falsify their bankruptcy petition and schedules are subject to having their discharge denied. 11 U.S.C. § 727(a)(4). Even if there exists no actual intent to falsify,

Page 7

**In re Matthew/Sherrie Gonyer**
**Case No. 07-32375**

a debtor who is careless with regards to their disclosures is subject to having their bankruptcy case dismissed for bad faith. *In re Jones*, 335 B.R. 203, 214 (Bankr. M.D.Fla. 2005). Either way, the ability of a debtor to receive a discharge is conditioned on their complete candor with regards to the information contained in their schedules.

Yet, the existence of an inaccuracy in a debtor's schedules will not, standing alone, warrant any adverse action so long as the inaccuracy is inadvertent. *In re McVay*, 345 B.R. 846, 849 (Bankr. N.D.Ohio 2006). The reality is that mistakes do occur. *Id*. And in this particular matter, the facts are consistent with an inadvertent mistake.

This Court has observed that debtors who are less than forthright will not normally disclose pertinent information. *In re Boyer*, 321 B.R. 457, 459 (Bankr. N.D.Ohio 2004). This Court has also previously admonished: when in doubt, disclose. *United States Trustee. v. Halishak (In re Halishak)*, 337 B.R. 620, 630 (Bankr. N.D.Ohio 2005). Placed in this context, what particularly stands out for the Court is that the error for which the UST complains involves not an omission, but a commission: The Debtors claimed an expense for which they, at the time their petition was filed, were legally obligated to pay, but against which they were not making any payments. Thus, while the Debtors may have committed a technical error – Bankruptcy Schedule J asks for the "*Current Expenditures of Individual Debtor(s)*" – their decision to expense their mortgage payment in their bankruptcy schedules is hardly indicative of carelessness or an intent to deceive. (emphasis added).

There is also no indication that the Debtors attempted to hide the fact that, at the time of their bankruptcy filing, they were no longer paying the debts secured against their marital residence. To the contrary, in the statement of intention filed with their petition, the Debtors set forth that it was their intention to surrender their residence. (Doc. No. 1). Thus, it could be easily ascertained that, at the time they filed their petition, the Debtors were either no longer paying the debt secured against their residence or would soon be ceasing to make such payments.

Page 8

In re Matthew/Sherrie Gonyer
Case No. 07-32375

It is also noted that it would have been wrong for the Debtors not to disclose their monthly contractual liability on the debts secured against their residence. In order to ascertan a debtor's financial situation for purposes of § 707(b)(3), not only is it necessary to know the debtor's current financial condition, but it is also necessary that the debtor's prior financial condition be examined. Thus, by listing their mortgage obligation in their current monthly expenditures, the Debtors were simply disclosing requisite information, albeit not in a technically correct manner.

In conclusion, the Court, for the reasons explained, cannot find that the Debtors filed their petition in "bad faith." As such, the dismissal of the Debtors' case under 11 U.S.C. § 707(b)(3)(A) is not warranted. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

**ORDERED** that the Motion of the United States Trustee to Dismiss pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, DENIED.

Dated: November 5, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 9

# CERTIFICATE OF SERVICE

Copies were mailed this 5th day of November, 2007 to:

Matthew D Gonyer
930 E Broadway #162
North Baltimore, OH 45872

Sherrie M Gonyer
930 E Broadway #162
North Baltimore, OH 45872

Ronald L Nagy
1789 Indian Wood Circle, Suite 105A
Maumee, OH 43537

John N Graham
5151 Monroe St #245
Toledo, OH 43623

Holly N Wolf
Manley Deas Kochalski LLC
1400 Goodale Blvd #200
Grandview, OH 43212

Dean Wyman
Howard M. Metzenbaum U.S. Court House
201 Superior Aveneue, Suite 44114
Cleveland, OH 44114-1240

Wells Fargo Bank, NA,
13675 Technology Dr, Bld 3
Eden Prairie, MN 55344-2252

                                                    /s/Jennifer S Huff
                                          Deputy Clerk, U.S. Bankruptcy Court